UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RHETT PETERS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-4479** |
| **BP EXPLORATION & PRODUCTION, INC., ET AL.** | **SECTION: D (1)** |

## ORDER & REASONS

Before the Court is BP's Motion for Summary Judgment filed by Defendants BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.[1] Halliburton Energy Services, Inc., Transocean Holdings, LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc. (collectively "Defendants") have joined in this Motion.[2] Plaintiff Rhett Peters ("Plaintiff") opposes the Motion.[3] Defendants have filed a Reply in support of their Motion.[4]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Defendants' Motion is **GRANTED**.

### I.   FACTUAL & PROCEDURAL BACKGROUND

This case arises from the *Deepwater Horizon* oil spill in the Gulf of Mexico in 2010 and the subsequent cleanup efforts of the Gulf Coast. On January 11, 2013, United States District Judge Carl J. Barbier, who presided over the multidistrict litigation arising out of the *Deepwater Horizon* incident, approved the *Deepwater*

---

[1] R. Doc. 43.
[2] *See* R. Doc. 43 n.1.
[3] R. Doc. 48.
[4] R. Doc. 58.

*Horizon* Medical Benefits Class Action Settlement Agreement (the "MSA").[5] However, certain individuals, referred to as "B3" plaintiffs, either opted out of or were excluded from the MSA.[6] Plaintiff Rhett Peters opted out of the MSA and, accordingly, is a B3 plaintiff.[7]

Plaintiff filed this individual action against Defendants on May 1, 2017 to recover for injuries allegedly sustained as a result of the oil spill.[8] In 2010, Plaintiff worked as a beach cleanup worker, tasked with cleaning up oil and oil-covered debris from the beaches and coastal areas in Gulfport and Biloxi, Mississippi.[9] Plaintiff alleges that Defendants' negligence and recklessness in both causing the Gulf oil spill and subsequently failing to properly design and implement a clean-up response caused him to suffer myriad injuries including elevated blood pressure, headaches, dizziness, loss of consciousness, rash, swelling, contact dermatitis, sinus congestion, drainage, shortness of breath, difficulty breathing, reactive airway disease, chronic bronchitis, chemically-induced asthma, blurred vision, eye redness, and eye itchiness.[10] Specifically, Plaintiff seeks to recover economic damages, personal injury damages—including damages for past and future medical expenses and for pain and suffering—punitive damages, and attorneys' fees, costs, and expenses.[11]

---

[5] *See* Brown v. BP Expl. & Prod. Inc., Civ. A. No. 18-9927, 2019 WL 2995869, at *1 (E.D. La. July 9, 2019) (citation omitted) (Africk, J.).
[6] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *2 (E.D. La. Apr. 1, 2021).
[7] R. Doc. 1 at ¶ 5.
[8] *Id.*
[9] R. Doc. 1-1.
[10] *See* R. Doc. 43-2.
[11] R. Doc. 1 at pp. 5–6.

Defendants filed the instant Motion for Summary Judgment on June 13, 2022, asserting that they are entitled to summary judgment because Plaintiff has not produced an expert report or any expert testimony in support of his exposure-related health complaints—a necessary requirement under controlling Fifth Circuit precedent—and, thus, cannot prove that his alleged medical conditions were caused by his exposure to substances related to the *Deepwater Horizon* oil spill.[12]  Plaintiff's deadline to produce expert reports was April 7, 2022.[13]  However, Plaintiff did not provide his expert report to Defendants until June 17, 2022,[14] more than two months after the expert report deadline had passed and several days after the June 13, 2022 deadline to file motions *in limine* challenging expert reports.[15]

In his response to Defendants' Motion, Plaintiff explains that his causation experts were unable to meet the Court's April 7, 2022 disclosure deadline "[d]ue to the sheer number of expert reports due in such a compressed timeframe."[16]  Plaintiff opposes the Motion, explaining that while he failed to timely provide Defendants with his expert report, he has since remedied the basis for Defendants' Motion by providing his expert report to Defendants.[17]  Notably, Plaintiff did not move for a continuance of the expert report deadlines nor has Plaintiff moved for leave for late disclosure of his expert witness.  Moreover, Plaintiff has failed to demonstrate that good cause

---

[12] *See* R. Doc. 43-1.
[13] *See* R. Doc. 33 at p. 2.
[14] *See* R. Doc. 48 at p. 2.
[15] *See* R. Doc. 33 at p. 3.
[16] R. Doc. 48 at p. 1.
[17] *Id.* at p. 2.

exists to amend the Scheduling Order to allow him leave to exchange untimely expert reports with Defendants.

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[19] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[20] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[21]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[22] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by

---

[18] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[19] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).
[20] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[21] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson*, 477 U.S. at 248).
[22] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).

exists to amend the Scheduling Order to allow him leave to exchange untimely expert reports with Defendants.

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[19] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[20] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[21]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[22] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by

---

[18] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[19] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).
[20] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[21] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson*, 477 U.S. at 248).
[22] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).

"showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[23] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[24] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[25]

### III.  ANALYSIS

The burden of proof is on the B3 plaintiffs to prove that "the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[26] To prove causation, the B3 plaintiffs are required to provide reliable expert testimony.[27] "A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation."[28]

Courts use "a two-step process in examining the admissibility of causation evidence in toxic tort cases."[29] First, a court must determine whether general

---

[23] *Id.* at 1265.
[24] *See Celotex*, 477 U.S. at 322–23.
[25] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).
[26] *In re Oil Spill*, 2021 WL 6053613, at *11.
[27] *See, e.g.*, *Seaman v. Seacor Marine, LLC*, 326 Fed. Appx. 721, 723 (5th Cir. 2009).
[28] *Id.* (citing *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).
[29] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).

causation exists.[30]  "General causation is whether a substance is capable of causing a particular injury or condition in the general population."[31]  Second, if the court finds that there is admissible general-causation evidence, "the district court must determine whether there is admissible specific-causation evidence."[32]  "[S]pecific causation is whether a substance caused a particular individual's injury."[33]  If the court finds that there is no admissible general causation evidence, it need not consider the issue of specific causation.[34]

Plaintiff has not provided any admissible expert testimony on general causation in this case.  As discussed above, Plaintiff neither moved to continue the relevant expert report deadlines in this matter nor did he move for late disclosure of his expert witness.  Moreover, Plaintiff has not demonstrated good cause as for his failure to abide by the deadlines in the Court's Scheduling Order.[35]  Even if the Court were to consider the untimely report of Dr. Jerald Cook, the Court notes that this Court has previously excluded identical versions of Dr. Cook's Report in numerous other B3 cases, finding that Dr. Cook fails to meet controlling Fifth Circuit precedent for reliability and helpfulness of expert opinions in a toxic exposure case.[36]

---

[30] *Id.*
[31] *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)).
[32] *Id.*
[33] *Id.*
[34] *Id.* ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.").
[35] *See* R. Doc. 33.
[36] *See, e.g.*, *Kaoui v. BP Expl. & Prod., Inc.*, No. CV 17-3313, R. Doc. 68 (E.D. La. Jan. 12, 2023) (Vitter, J.) (excluding Version 4 of Dr. Cook's Report); *Lenard v. BP Expl. & Prod., Inc.*, No. CV 17-3546, R. Doc. 80 (E.D. La. Jan. 19, 2023) (Vitter, J.) (excluding Version 3 of Dr. Cook's Report); *English v. BP Expl. & Prod. Inc.*, No. CV 17-4325, 2022 WL 5158669 (E.D. La. Sept. 26, 2022) (Vitter, J.), *reconsideration denied*, 2022 WL 17532293 (E.D. La. Dec. 8, 2022) (excluding Version 2 of Dr. Cook's Report).

Accordingly, the Court would exclude Dr. Cook from testifying in this matter as well, leaving Plaintiff without expert testimony on general causation.

Without expert testimony, which is required to prove general causation,[37] Plaintiff has failed to demonstrate a genuine dispute of material fact regarding his claims that his injuries were caused by exposure to oil. "When a plaintiff has no expert testimony to prove his medical diagnosis or causation at trial, the plaintiff's suit may be dismissed at the summary judgment stage."[38] Thus, Defendants' Motion for Summary Judgment must be granted as Defendants are entitled to judgment as a matter of law due to Plaintiff's failure to establish general causation.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment[39] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED with prejudice**.

New Orleans, Louisiana, January 26, 2023.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[37] *See, e.g., Perkins v. BP Expl. & Prod.*, No. 17-4476, 2022 WL 972276, at *2 (E.D. La. Mar. 31, 2022) (Milazzo, J.) ("In a toxic tort suit such as this one, the plaintiff must present admissible expert testimony to establish general causation as well as specific causation.").
[38] *Williams v. BP Expl. & Prod., Inc.*, No. 18-9753, 2019 WL 6615504, at *11 (E.D. La. Dec. 5, 2019) (Morgan, J.).
[39] R. Doc. 43.